**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**GLORIA OLIVER-SIMON,**

> **Plaintiff,**

> **v.**

**R. JAMES NICHOLSON[1],**
**Secretary, U.S. Department of Veterans Affairs,**

> **Defendant.**

---

**Civil Action No. 01-2169 (JDB)**

<u>**MEMORANDUM OPINION**</u>

Plaintiff Gloria Oliver-Simon filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>, as amended ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 <u>et seq.</u>, as amended ("ADEA"), alleging that defendant R. James Nicholson, Secretary of the U.S. Department of Veterans Affairs ("defendant" or "VA"), discriminated against her on the basis of her race, sex and age when she was not selected for five discrete positions for which she had applied.  Plaintiff also alleges that the same five non-selections were in retaliation for her participation in activity protected by Title VII and the ADEA.  Defendant has now moved for summary judgment on all of plaintiff's discrimination and retaliation claims based on plaintiff's failure to state a prima facie case or rebut defendant's proffered justification for her non-selection.  For the reasons set forth below, defendant's motion

---

[1]  The name of the current Secretary has been substituted pursuant to Fed.R.Civ.P. 25(d)(1).

for summary judgment is granted.

## **BACKGROUND**

The following facts relating to each non-selection are undisputed unless otherwise noted. Plaintiff, a African-American female born on September 19, 1947, has worked for the VA for the past 37 years, and currently holds the position of Supervisory Human Resources Specialist at the GS-14 level.  Pl. Opp'n at 1.  Since 1980, plaintiff has worked in the VA's Office of Human Resources Management and Labor Relations (OHRM). Plaintiff's Statement of Material Facts in Genuine Dispute ("Pl. Statement"), Ex. 1, Declaration of Gloria Oliver-Simon ("Oliver-Simon Decl.") ¶ 2.  Over the period from 1995 through 2001, plaintiff applied for over twenty different positions at VA and was rejected on each occasion.   At issue in the present case are a series of five non-selections that occurred during the twenty-eight month period from September 1998 to January 2001.  Plaintiff's original Complaint included a claim for every position as to which plaintiff was rejected.  However, through Orders dated October 31, 2002, and November 22, 2003, the Court dismissed all but five of plaintiff's claims for failure to timely exhaust her administrative remedies.  The five remaining claims are designated by the following vacancy announcements: HRM-98-74; OGC-99-33; HRM-00-24; HRM-00-50; and HRM-01-01.

## I.      **Vacancy Announcement HRM-98-74**

In September 1998, plaintiff applied for a vacancy in the position of Supervisory Personnel Management Specialist in OHRM.  <u>See</u> Defendant's Statement of Material Facts Not in Genuine Dispute ("Def. Statement") ¶ 1.  The rating panel, comprised of Earl Koteen, Dennis Curley and Veronica Wales, <u>see</u> Pl. Opp'n at 2, reviewed plaintiff's application along with others, ranked all the candidates and forwarded its list of best qualified candidates to Deputy Assistant

Secretary Ronald Cowles, a white male, whose role it was to recommend a candidate for appointment.  See Pl. Opp'n, Ex. 14, Deposition of Joyce Elaine Felder ("Felder  Dep.") at 75. Plaintiff was not ranked among the "best qualified" for this position, and her name was not forwarded to the selecting official.  Def. Statement ¶ 2.  Mr. Cowles ultimately selected Nilda Salas, a Hispanic female born on November 6, 1952, for the position.  See id. ¶ 3; Pl. Opp'n at 2 & Ex. 17.  Because Ms. Salas was already a GS-15 and was laterally reassigned to this vacancy from elsewhere in VA (she had previously worked in the Office of Human Resources Management in 1995, when she assisted with the restructuring of the Office), she was not rated or ranked by the rating panel.  See Pl. Opp'n, Ex. 9, Affidavit of Earl Koteen ("Koteen Aff.") at 19 (stating that "reassignment candidates [already at the same GS level as the vacancy] were not referred to us for rating and ranking. . . . If they are qualified, they can be referred without rating and ranking.").

## II.    Vacancy Announcement OGC-99-33

In August 1998, plaintiff applied for the position of Supervisory Personnel Management Specialist in the Office of the General Counsel (advertised in announcement number OGC-99-33), which was a GS-14 position.  Def. Statement ¶ 4.  Plaintiff was interviewed for this position, but the vacancy was cancelled.  The position was re-posted in January 1999, at which time plaintiff was again interviewed, this time with selecting official Edward McGarrity.  See Pl. Opp'n at 3.  In an April 20, 1999 memo, plaintiff was informed that she had not been selected for the position, and that Mr. McGarrity had offered the job to Rita McCullough, a white female born on January 5, 1954, who at the time was working in the same position at the Board of Veterans Appeals.  See Def. Statement  ¶¶ 5-6; Pl. Opp'n at 2 & Ex. 2, Deposition of Gloria

Oliver-Simon ("Oliver-Simon Dep."), pp.73, 75.

## III.   Vacancy Announcement HRM-00-24

In March 2000, plaintiff again applied for the position of Supervisory Personnel Management Specialist (HRM-00-24).  This was the same position that had been previously posted as HRM 98-74 and filled by Ms. Salas, who departed the job after a year.  See Pl. Statement ¶ 27.  While her application was pending, plaintiff was detailed to fill the position in an acting capacity from July 2000 through November 2000.  Id. ¶ 28.  For this vacancy, Mr. Cowles was initially again responsible for supervision of the hiring process, but Constantine Verenes, Director of the Office of Administration at the VA, eventually assumed the role of recommending official.  Id. ¶ 34.  The rating panel, consisting of Mr. Curley, James Lee and Barbara Hulick, did not rank plaintiff among the best qualified, and her name was not among those forwarded to Mr. Verenes for selection.  Def. Statement ¶ 8.  Those ranked best qualified were interviewed by Mr. Verenes and Elaine Marshall, who worked in the VA's Veterans Benefit Association.  Oliver-Simon Decl. ¶ 25(d); Pl. Opp'n at 2, 17.  Ultimately, Theresa Jenkins, a white female born on January 20, 1954, who worked in another area of the VA, was offered the position in October 2000.[2]  See Def. Statement ¶ 9; Oliver-Simon Decl. ¶ 25 (d); Pl. Opp'n at 2, 14.  When she declined the job, Mr. Verenes offered it to Ms. Marshall, who was born on August 3, 1942, through a lateral reassignment.  See Def. Statement ¶ 10; Oliver-Simon Dep. at 88-89; Pl. Opp'n at 2**.**

---

[2] Ms. Jenkins, like Ms. Salas in the HRM 98-74 hiring process, was eligible to be laterally reassigned to the position while working in another area of the VA at the same GS level as the vacancy, and her application therefore was not considered by the rating panel.

**IV.    Vacancy Announcement HRM-00-50**

Plaintiff's fourth non-selection claim arises from her application for another Supervisory

Personnel Management Specialist position, announced in HRM-00-50 in September 2000.  Def.

Statement ¶ 11.  The rating panel for this position consisted of Mr. Lee and Carol Mellen, with

Mr. Cowles and the Principal Deputy Assistant Secretary for Human Resources and

Administration, Robert Schultz, serving as recommending officials.  See Pl. Opp'n, Ex. 15,

Deposition of Ronald Cowles at 218-19; id., Ex. 28, Combined Rating Sheet.  Deputy Assistant

Secretary for Human Resources Management, Ventris Gibson, was the selecting official.  See Pl.

Opp'n at 2 & Ex. 28, Selecting Official's Endorsement.  Plaintiff's application was reviewed by

the rating panel members, but her scores were not sufficient to place her on the best qualified list,

so her name was not forwarded to the recommending or selecting officials.  See Def. Statement ¶

12.  On November 29, 2000, Ms. Gibson selected Angel Wolfry, a white female born on August

12, 1965, to fill the position.  See Def. Statement  ¶ 13; Pl. Opp'n, Ex. 28, Selecting Official's

Endorsement.

**V.    Vacancy Announcement HRM-01-01**

Plaintiff's final non-selection claim is based on her application for an Executive Assistant

position, which was announced in November 2000.  Def. Statement ¶ 14.  The rating panel for

this position was composed of Joyce Felder, Melvin Sessa, and Armando Rodriguez.  Pl. Opp'n,

Ex. 32, Affidavit of Vivian Tydings at 8.  Based on the panel's ratings, a list of twelve "best

qualified" applicants was forwarded to Mr. Schultz, the selecting official.  See id.  Mr. Schultz

believed the list was too long, so he reconvened Mr. Sessa, Mr. Rodriguez and Ms. Felder as a

screening panel to shorten the list by conducting interviews of the applicants.  Def. Mot., Ex. 12,

Affidavit of Robert Schultz ("Schultz Aff.") at 5-6.  Plaintiff was interviewed by the panel,[3] but

when the panel narrowed the candidates for the position to four applicants, on January 9, 2001,

plaintiff was not on the list given to Mr. Schultz.  Pl. Opp'n, Ex. 31, Promotion Certificate.

Angela Porter, an African-American female born on July 27, 1963, and already serving as an

Executive Assistant elsewhere in the VA, was chosen for the position.  Def. Statement ¶ 16; Pl.

Opp'n, Ex. 31, Selecting Official's Endorsement.

## VI.    Plaintiff's Complaints

Besides these non-selections, during the period from 1995 through filing of this action on

October 19, 2001, plaintiff has complained to her superiors several times claiming that she was

being unfairly overlooked for promotion, and alleging discrimination and retaliation by the VA.

See Oliver-Simon Decl. ¶ 23.  Plaintiff initially complained to managers, including Ms. Felder,

Mr. Cowles and others, in 1995 and 1996, expressing displeasure with her minimal role in the

reorganization of OHRM and claiming that there was insufficient minority representation among

the leadership of the reorganization.  Id.  The last meeting where these concerns were raised was

between plaintiff and Eugene Brickhouse, one of her superiors, on September 11, 1996.  Id.

Besides complaints about the reorganization process, plaintiff also contacted an EEO counselor

on April 29, 1999, following several non-selections, and filed an administrative complaint on

June 17, 1999.  See Def. Mot. for Partial Dismissal, Ex. 1, EEO Complaint.  Plaintiff also

contacted the EEO office on November 30, 2000, regarding non-selections subsequent to her

initial complaint, and a second or amended complaint was filed on January 12, 2001.  Id., Ex. 3

---

[3]    Plaintiff was actually only interviewed by Mr. Rodriguez and Ms. Felder, because Mr. Sessa was on leave on the day plaintiff was interviewed.  Oliver-Simon Dec. ¶ 25(h).

(amendment to EEO complaint).

## LEGAL STANDARDS

I.      **Summary Judgment**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252; see also

Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

## II.     Legal Framework Under Title VII and the ADEA

The framework for establishing prima facie cases of discrimination and retaliation was introduced for Title VII claims in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and courts have since routinely applied the same analysis to claims arising under the ADEA,  E.g., Hall v. Giant Food, Inc., 175 F.3d 1074, 1077 (D.C. Cir. 1999) (applying the McDonnell Douglas framework to ADEA claims).   Under this framework, a plaintiff has the burden of establishing a prima facie case of discrimination or retaliation by a preponderance of the evidence.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

To establish a prima facie case of discrimination, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002); Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).  The D.C. Circuit has refined this prima facie test for discrimination in non-promotion and failure to hire cases, such that plaintiff must establish:  (1) that she belongs to a protected group; (2) that she applied and was qualified for a job for which the employer was seeking applicants (i.e., the job sought was vacant); (3) that despite her qualifications, she was rejected (i.e., she suffered from no absolute or relative lack of qualifications for the position); and (4) that after her rejection the position was filled, or the position remained open and the employer continued to seek applicants from persons of complainant's qualification level.  Morgan v. Freddie Mac, 328 F.3d 647, 650-51 (D.C. Cir. 2003); see also McDonnell Douglas, 411 U.S. at 802.  To

make out a prima facie claim of retaliation, a plaintiff must establish that (1) she engaged in a statutorily protected activity; (2) the employer took an adverse personnel action; and (3) a causal connection existed between the two.  Brody, 199 F.3d at 452; Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985); McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984).

If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its actions.  McDonnell Douglas, 411 U.S. at 802.  The employer's burden, however, is merely one of production.  Burdine, 450 U.S. at 254-55.  The employer "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  Id.

If the employer successfully articulates a nondiscriminatory or nonretaliatory basis for its actions, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination or retaliation.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).  The plaintiff may attempt to establish that she was the victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence."  Id. (quoting Burdine, 450 U.S. at 256).  But "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination."  Id. at 147.  Thus, the trier of fact may also "consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  Id. (quoting Burdine, 450 U.S. at 255 n.10).  "Whether judgment as a matter of law is appropriate in any particular case will

depend on a number of factors . . . includ[ing] the strength of the plaintiff's prima facie case, the

probative value of the proof that the employer's explanation is false, and any other evidence that

supports the employer's case and that properly may be considered on a motion for judgment as a

matter of law." Id. at 148-49.  As the D.C. Circuit has explained:

> Assuming then that the employer has met its burden of producing a
> nondiscriminatory reason for its actions, the focus of proceedings at trial (and at
> summary judgment) will be on whether the jury could infer discrimination from
> the combination of (1) the plaintiff's prima facie case; (2) any evidence the
> plaintiff presents to attack the employer's proffered explanation for its actions; and
> (3) any further evidence of discrimination that may be available to the plaintiff
> (such as independent evidence of discriminatory statements or attitudes on the part
> of the employer) or any contrary evidence that may be available to the employer
> (such as evidence of a strong track record in equal opportunity employment).

Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc); see also

Waterhouse v. District of Columbia, 298 F.3d 989, 992-993 (D.C. Cir. 2002).

Although the "intermediate evidentiary burdens shift back and forth" under the

McDonnell-Douglas framework, "'[t]he ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the

plaintiff.'" Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 253).  Once the defendant

has proffered a legitimate non-discriminatory reason for its action, the question becomes whether

that proffered reason is a pretext for discrimination, and at this point the McDonnell Douglas

shifting burdens framework disappears.   The sole remaining issue becomes discrimination vel

non, and "to survive summary judgment the plaintiff must show that a reasonable jury could

conclude from all of the evidence that the adverse employment decision was made for a

discriminatory reason." Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003); see Reeves,

530 U.S. at 142-43.  Examination of that issue in this setting therefore requires consideration of

all the relevant circumstances in evidence, including the strength of the prima facie case, any

direct evidence of discrimination, any circumstantial evidence that defendant's proffered

explanation is false (which may be enough with the prima facie case to infer unlawful

discrimination), and any properly-considered evidence supporting the employer's case.  Reeves,

530 U.S. at 147-48; see also Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir.

2004); Lathram, 336 F.3d at 1089; Waterhouse, 298 F.3d at 993; Aka, 156 F.3d at 1290.

## ANALYSIS

**I.     Discrimination Claims**

   A.     Prima Facie Case

   Plaintiff has established a prima facie case of discrimination in her non-selection for four

out of the five vacancies she sought (HRM-98-74; HRM-00-24; HRM-00-50; and HRM-01-01).

As a African-American female over forty years of age (at the time of her non-selection), plaintiff

belongs to three protected groups.  Pl. Opp'n at 1.  For all of the positions, plaintiff applied and

was rejected, and defendant concedes she was minimally qualified for each position.  See Pl.

Opp'n, Ex. 7; Def. Resp. to Pl. Disc. Req. at 8-9.  Cutting further in plaintiff's favor in

establishing a prima facie case of discrimination is the fact that for each of these four positions,

the selectee was outside of plaintiff's protected class for at least one basis of her discrimination

claim (sex, race, or age).  See Pl. Opp'n at 2-3 (chart summarizing the race, sex, and age of each

selectee).[4]

---

   [4] Plaintiff also introduces statistical evidence tending to show overerepresentation of
African-American employees at the lowest GS level (and underrepresenation at the highest)

(continued...)

For plaintiff's claim of non-selection for vacancy OGC-99-33, however she fails to establish a prima facie discrimination case.  Plaintiff does not establish a critical element of "the McDonnell Douglas test by showing that [she has] been subjected to some sort of *adverse* personnel or employment action."  Brody, 199 F.3d at 452 (emphasis added).  The D.C. Circuit has explained:

> [A] plaintiff . . . who is denied a lateral transfer – that is, one in which she suffers no diminution in pay or benefits – does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

Id. at 457.  As in Brody, here it is undisputed that if plaintiff had been selected for the OGC-99-33 position, "it would have been a lateral transfer" from plaintiff's current GS-14 position to another GS-14 position with equal GS rank, pay and benefits.  See Pl. Opp'n, Ex. 24, Deposition of Gloria Oliver-Simon ("Oliver-Simon Dep.") at 67-68; Am. Compl. ¶ 4.  Plaintiff has offered no evidence that she suffered an objectively tangible harm as a result of being denied the lateral transfer at issue in this claim.  She contends that she "would have liked to have worked" in the General Counsel's Office (where this position was), and that the OGC-99-33 position would have

---

[4](...continued)
relative to the overall percentage of African-American employees in the VA's workforce.  See Pl. Opp'n, Ex. 6.  Plaintiff asserts that this evidence is probative of defendant's discriminatory intent in each of her discrimination claims.  However, in an individual claim, statistics on the composition of defendant's workforce "while helpful, may not be, in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to [hire]."  McDonnell Douglas, 411 U.S. at 805 n.19.  Because plaintiff makes a prima facie case for discrimination on all but one of her claims, the Court finds an extended discussion of this statistical evidence unnecessary.  This evidence is sufficient to weigh in favor of an inference of discrimination, but is not enough, in light of the absence of further evidence cited by plaintiff, to establish pretext as to any of plaintiff's claims.

been "very appropriate for one with [her] background." Oliver-Simon Dep. at 20.  However,

"[m]ere idiosyncrasies of personal preference are not sufficient to state an injury." Brody, 199

F.3d at 457.

Plaintiff failed to respond to defendant's motion for summary judgment on this claim,

effectively conceding it.  Plaintiff herself states that her "claim" based on OGC-99-33 is not a

claim for which she seeks damages; rather, it simply "provides crucial background evidence

concerning her discrimination and retaliation claims."  Pl. Opp'n at 3 n3.  In addition to plaintiff's

apparent concession on this claim, she has failed to establish a prima facie case for

discrimination, and thus summary judgment on this claim will be entered for defendant.

B.    Proffered Justifications and Pretext

1.    HRM-98-74

Because Plaintiff has established a prima facie case on four claims, the burden shifts to

defendant to articulate a legitimate, non-discriminatory reason for plaintiff's non-selections.

McDonnell Douglas, 411 U.S. at 802.  For position HRM-98-74, defendant points to the

assessment of the rating panel, which concluded that plaintiff was less qualified for the position

relative to other applicants, and thus did not include her name on the "best qualified" list that was

forwarded to the selecting official.  See Oliver-Simon Dep. at 47; Pl. Opp'n, Ex. 13, Affidavit of

Ron Cowles ("Cowles Aff.") at 1.  Each applicant for the position was required to submit an

application that addressed how that applicant believed he or she satisfied the requisite skills,

knowledge, and abilities for the position.  See Def. Mem., Ex.5, Affidavit of Veronica Wales

("Wales Aff.") at 2-3.  The rating panel reviewed only the applicants' responses when assessing

whether each applicant should be rated as "best qualified."  See Id.  Ms. Wales, a member of the

rating panel, explained in regard to plaintiff's application that "those who made the best qualified list were a lot more specific [than plaintiff] and demonstrated . . . greater depth of experience and breadth of experience." Def. Mem., Ex. 5, Affidavit of Veronica Wales ("Wales Aff.") at 2. Ms. Wales also detailed how plaintiff's responses to the rating factors on the application fell short of those of other applicants in the level of detail provided, id. at 2-3, and the completeness of the responses, id. at 12-13. In addition to plaintiff not making it onto the "best qualified" list, defendant also relies on the fact that Ms. Salas, the selectee, was essentially performing the equivalent job at the Defense Mapping Agency. See Def. Mot. at 14. Ms. Salas was also already performing at the GS-15 level at the time of her selection. Id. The employer's burden is merely one of articulating a legitimate, non-discriminatory reason for not selecting plaintiff, which defendant has done, and the burden thus shifts back to plaintiff to establish that defendant's articulated reason for not selecting her is a pretext for discrimination.

Plaintiff's principal argument for pretext is that the selectee, Ms. Salas, was "pre-selected" for this position. See Pl. Opp'n at 7-13. Plaintiff's claim that Ms. Salas was pre-selected for the HR-98-74 position is based on the fact that the selecting official, Mr. Cowles, went outside the list of "best qualified" candidates to select her. Pl. Opp'n at 7-8. However, when Ms. Salas was selected, plaintiff was no longer being considered for the position, and therefore the manner of Ms. Salas' selection is irrelevant. Plaintiff did not make the best qualified list, and was not forwarded to the selecting official for consideration. To challenge her non-selection, plaintiff must show evidence of discrimination (i.e., pretext) at the review panel level, which she has not done. Moreover, there is nothing nefarious or suspicious about the selection of Ms. Salas through non-competitive reassignment. See Pl. Opp'n, Ex. 12, VA Handbook, Appendix E:

Merit Promotion Plan for Competitive Positions (enumerating circumstances requiring competitive hiring processes). Several witnesses testified that because Ms. Salas was already a GS-15, she did not have to go through a rating panel to be hired into another GS-15 position, as it would not be a promotion, but rather a lateral reassignment. See Def. Mot, Ex. 2, Deposition of Dennis Michael Curley ("Curley Dep.") at 79. Mr. Koteen also explained that "reassignment candidates were not referred to us for rating and ranking. . . . If they are qualified, they can be referred without rating and ranking." See Koteen Aff. at 19.

Even if there had been favoritism in Ms. Salas' selection process, courts have held that "[p]reselection . . . does not violate Title VII when such preselection is based on the qualifications of the party and not on some basis prohibited by Title VII." Goosetree v. Tennessee, 796 F.2d 854, 861 (6th Cir. 1986); accord Housley v. Boeing Co., 177 F. Supp. 2d 1209, 1217 (D.Kan. 2001) (stating that "[f]avoritism based on criteria other than gender or age . . . does not violate the federal anti-discrimination laws and does not raise an inference of discrimination"). Although pre-selection sheds light on an employer's motivation for a hiring decision, where there is no evidence that pre-selection is based on a motive prohibited by Title VII or ADEA, the conduct is not actionable. Shelborne v. Runyon, 1997 WL 527352, *10 (D.D.C. Aug 21, 1997). Therefore, plaintiff's pre-selection claim does not advance her case for pretext unless she produces some evidence that discrimination played a role in Ms. Salas' pre-selection and thus plaintiff's non-selection. Plaintiff has pointed to no such evidence. "To survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." Lathram, 336 F.3d at 1088. Plaintiff has failed to do so.

Plaintiff also asserts that because her credentials are "superior to [those] of the selectee" her non-selection was the result of discrimination.  However, this claim is belied by plaintiff's own admissions that "Ms. Salas was given projects . . . which permitted her to gain valuable experience" and that "as the Goal Manager and Restructuring Team Leader for [the 1996 OHRM restructuring, Ms. Salas] had a significant input into the reorganization."  Pl. Opp'n at 11-12. Although Plaintiff has laudably continued her education to a level beyond that of the selectee, plaintiff's advanced degrees were not prerequisites for the position, and only where a reasonable employer would have found plaintiff "significantly better qualified" can a fact finder infer the employer consciously selected the less qualified applicant.  Carter v. George Washington Univ., 387 F.3d 872, 881 (D.C. Cir. 2004) (quoting Aka, 156 F.3d at 1294); see also Walker v. Dalton, 94 F. Supp. 2d 8, 16 (D.D.C. 2000) ("slight questions of comparative qualifications do not warrant a jury trial.").  In order for disparities in qualifications to be evidence of pretext that would lead the Court to second-guess defendant's hiring decision, they must be "so apparent as to virtually jump off the page and slap us in the face.'"  Choates v. Powell, 265 F. Supp.2d 81, 95 (D.D.C. 2003); see also Bickerstaff v. Nordstrom, Inc., 48 F. Supp. 2d 790, 801 (N.D.Ill. 1999) (being in defendant's employ for longer than selectee does not by itself qualify plaintiff for the position in question, particularly where selectee had different and potentially more relevant experience).  Moreover, plaintiff's evidence of her superior qualifications is based solely on her own assessment of her qualifications, which is generally not enough.  See Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) (stating that pretext is not shown "simply based on [plaintiff's] own subjective assessment of [her] own performance"), aff'd, 298 F.3d 989 (D.C. Cir. 2002) .

Plaintiff also states that Ms. Felder, who discussed the selection of Ms. Salas with Mr. Cowles, once told her that she would not be promoted.  See Oliver-Simon Decl. ¶ 23.  Plaintiff claims this alleged statement shows discrimination, and Ms. Felder's involvement in filling position 98-74 shows that plaintiff's non-selection was the result of discrimination.  See Pl. Opp'n at 9-10.  However, not only is plaintiff's declaration unsubstantiated hearsay, and fails to includes any specifics about the conversation, but plaintiff herself admits the statement was made during a time when plaintiff was seeking a promotion.  Oliver-Simon Decl. ¶ 23.  Therefore, far from inferring discrimination, a statement that plaintiff would not be promoted after she requested a promotion is merely a statement of probability or fact.

Finally, Plaintiff claims that the rating panel erred in numerous ways, including failing to "evaluate [her] total background."  See Oliver-Simon Dep. at 48.  Plaintiff has not cited any specific errors that she believes occurred in the rating panel.  Regardless, the question before this Court "is not the correctness or desirability of reasons offered [by defendant] . . . [but] whether the employer honestly believes in the reasons it offers." Fischbach v. District of Columbia Dep't. of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996); see EEOC v. Flasher Co., 986 F.2d 1312, 1322 (10th Cir.1992) (Title VII does not hold employer liable for erroneous judgment, unless that judgment was motivated by illegal discrimination).  Plaintiff has pointed to no evidence on which a reasonable jury could conclude that her non-selection for position HRM-98-74 was based on discriminatory motive, and defendants' motion for summary judgment on this claim will therefore be granted.

2.     HRM-00-24

For position HRM-00-24, defendant points to the fact that plaintiff was not ranked near

the top on two of the three rating panel members' evaluation sheets, and therefore her combined

rating score based on the average of the three did not place her on the "best qualified" list

forwarded to Mr. Verenes for selection.  Def. Mot. at 16; id., Ex. 26.[5]  Mr. Curley, one of the

rating panel members, explained that plaintiff did not receive a good score because the panel was

not looking simply for someone who held certain jobs, but rather for someone who had obtained

specific results, and according to his recollection those referred to the selecting official had

achieved the desired results.  See Def. Mot., Ex. 6, Affidavit of Dennis Curley ("Curley Aff.") at

5-6.  Defendant also notes that the selectee for this position, Ms. Jenkins, was already a GS-15

and, like Ms. Salas, as a lateral reassignment was not required to go through the competitive

selection process.  See Def. Mot., Ex. 4, Deposition of Barbara Hulick ("Hulick Dep.") at 61-62.

Thus, Ms. Jenkins' selection was unrelated to the rejection of plaintiff by the rating panel.

Because defendant has proffered a legitimate non-discriminatory reason for plaintiff's non-

selection, the burden shifts back to plaintiff to show that defendant's proffered explanation is a

pretext for discrimination.

Plaintiff assails defendant's explanation for her non-selection in much the same manner as

she did for position HRM-98-74, including claims that the selectee was pre-selected, that the

selectee was not rated by the rating panel because she was a lateral reassignee, and that plaintiff

---

[5] Plaintiff observes that Mr. Lee, a member of the rating panel, claims that the signature on the Combined Rating Sheet is not his.  See  Def. Mot., Ex. 8 Affidavit of James Lee ("Lee Aff.") at 5.  However, Mr. Lee's individual rating sheet, which bears his actual signature, matches the scores attributed to him on the Combined Rating Sheet.  Therefore, the fact that Mr. Lee may not have signed the Combined Rating Sheet is of no consequence.

was better qualified than the selectee.  Pl. Statement ¶ 25(d).  None of these allegations is sufficient to paint defendant's explanation as pretextual.  Even if Ms. Jenkins (or Ms. Marshall after her) had been pre-selected, there is no evidence that such pre-selection was based on plaintiff's race, age or sex.  Reassignment candidates already at the same GS level as the open position may be considered for hiring without being rated by the rating panel, see Def. Mot, Ex. 4, Deposition of Barbara Hulick at 62, and plaintiff points to nothing irregular or suspect when she states that the position was "filled by yet another non-competitive reassignment," Pl. Opp'n at 14.  As with position HRM-98-74, plaintiff's assertions as to her qualifications are not sufficient for a finding that the selectee was so disproportionately unqualified that it "jump[s] off the page and slap[s] us in the face."  Choates, 265 F. Supp. 2d at 95.

 The only fact that stands out in this non-selection is that plaintiff had been temporarily detailed to fill the position in question while the selection process was ongoing.  See Pl. Statement ¶ 28.  However, this fact does not serve to clearly elevate plaintiff's credentials for the job above all others.  Rather, it simply lends credence to the conclusion that plaintiff was qualified for the job in question – a fact which has already been admitted by defendant, and which gets plaintiff no further than satisfying an element of the prima facie case.  Plaintiff's detail does not show discrimination was a factor in her non-selection, nor does it rebut any of defendant's proffered justifications.  The mere fact that plaintiff was detailed to the position does not supplant the rating panel's determination that she was not among the "best qualified."  Because plaintiff fails to offer evidence showing that defendant's non-discriminatory explanation for not selecting her was a pretext for discrimination, defendant's motion for summary judgment on this claim must be granted as well.

3.      HRM-00-50

For position HRM-00-50, defendant has emphasized that the rating panel's review of plaintiff put her in the bottom half of the candidates evaluated, and she was not among those forwarded to the recommending officials as best qualified.  See Pl. Opp'n, Ex. 28, Combined Rating Sheet.  Carol Mellen, one of the rating panel members, stated that reviews were conducted by looking "strictly at the application package" and plaintiff's qualifications were "predominantly average in terms of meeting the [Factor Quality Levels] that we were provided." See Def. Mot., Ex. 9, Affidavit of Carol Mellen ("Mellen Aff.") at 6, 11-12.  Moreover, plaintiff was rated below average on one rating factor-- the ability to apply innovative processes and methods to the agency goals -- because her application did not indicate she possessed those skills.  Id. at 10.  Because defendant has met its burden of articulating a legitimate, non-discriminatory reason for plaintiff's non-selection, the burden then shifts to plaintiff to show pretext.

Plaintiff raises the same arguments as to why defendant's justification for not selecting her is pretextual, including procedural irregularities, pre-selection, favoritism in the selection process, and involvement in the selection process by senior officials who were involved in the selections at issue in plaintiff's other claims.  Pl. Opp'n at 22-26.  However, although plaintiff's evidence may show the process to be imperfect, her evidence is not sufficient to establish that defendant's proffered explanation is pretextual absent some actual evidence that defendant acted on a motivation to discriminate against plaintiff based on her age, race or sex.  See  Flasher Co., 986 F.2d at 1322 (Title VII does not hold employer liable for erroneous judgment, unless that judgment was motivated by illegal discrimination); Housley, 177 F. Supp. 2d at 1217 (stating

that "[f]avoritism based on criteria other than gender or age . . . does not violate the federal anti-discrimination laws and does not raise an inference of discrimination").  "Even if a court suspects that a job applicant 'was victimized by [ ] poor selection procedures' it may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Fischbach, 86 F.3d at 1183 (citing Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)).

Plaintiff does point out that Mr. Lee, a member of the reviewing panel, testified that he did not recall discussing with Ms. Mellen a cut off score for determining the "best qualified." See Lee Aff. at 10.  This somewhat conflicts with the testimony of Ms. Mellen, who stated that she and Mr. Lee found a "natural break" in the candidates' scores.  See Mellen Aff. at 10-11. However, this disagreement is ultimately immaterial, since neither Mr. Lee nor Ms. Mellen disagreed with the veracity of the scores on the rating sheet.  Moreover, neither Mr. Lee nor Ms. Mellen testified that they believed plaintiff should have been included in the list of "best qualified."  In fact, plaintiff's scores placed her eighth out of twelve candidates, with only four candidates being forwarded for consideration by the recommending officials.  See Pl. Opp'n, Ex. 28, Combined Rating Sheet.  Thus, on this claim as well, plaintiff has pointed to no evidence that establishes a discriminatory motive for her non-selection, nor does she proffer sufficient evidence from which a reasonable jury could conclude that defendant's explanation for its actions was a pretext for discrimination.

4.    HRM-01-01

On this last claim, defendant notes that again plaintiff's name was not one of those forwarded to the selecting official for final selection. Defendant concedes that plaintiff's name appeared on the promotion certificate referring the seven VA candidates to be considered (along

with 5 external candidates), but notes that the selecting official chose to convene an interview panel to narrow the candidate pool for final selection. <u>See</u> Def. Mot. at 20.   Following the interview panel review, plaintiff's name was not sent to the selecting official for final consideration.   According to the interview panel (Ms. Felder, Mr. Rodriguez, and Mr. Sessa), plaintiff was ranked tenth out of twelve candidates based on the members' individual scoring of her interview.[6]   <u>See</u> Pl. Opp'n, Ex. 31, Evaluation Summary.   Mr. Schultz, the selecting official, testified that plaintiff was not among the final candidates he considered for the position.   <u>See</u> Schultz Aff. at 6.   Defendant also points out that the selectee, Ms. Porter, had superior relevant qualifications to those of plaintiff, including prior work experience as an executive assistant, and in fact she had substituted for the prior holder of the vacant job at issue.   <u>See</u> Def. Mot. at 21. Thus, defendant has met its burden of articulating a non-discriminatory reason for not selecting plaintiff.

Plaintiff nonetheless claims that Mr. Sessa's absence from the interview panel during her interview, as well as Mr. Schultz's claim that her name was not among the four forwarded to him for selection despite her appearance on the promotion certificate, are irregularities that raise an inference of discrimination.   Pl. Opp'n at 27-30.   However, as addressed above, neither issue creates a material fact in dispute, nor do these arguments indicate evidence of discrimination. Although plaintiff was included among the initial twelve applicants on the promotion certificate,

---

[6] Due to being on leave, Mr. Sessa only interviewed and evaluated 7 of the 12 candidates. Plaintiff argues that his absence shows procedural irregularities that demonstrate that defendant's justifications are a pretext for discrimination.   However, Mr. Sessa missed four other applicant interviews in addition to plaintiff's.   Moreover, there is no evidence that Mr. Sessa's absence was based on any discriminatory motive, or that his absence had a material impact on plaintiff's rating.

that fact alone does not show that defendant's justifications -- plaintiff's poor score by the interview panel and Ms. Porter's superior qualifications -- are a pretext for discrimination.

Plaintiff also contends that the very convening of an interview panel raises a suspicion of discrimination.  However, not only is convening an interview panel consistent with the VA handbook, see Pl. Opp'n, Ex. 29, but it is also, as plaintiff herself describes it, "benign," Pl. Opp'n at 29.  There is no evidence that the interview panel was convened in order to discriminate against plaintiff or even specifically to exclude plaintiff from consideration -- seven other applicants were excluded, along with plaintiff, from final consideration for the position.  Plaintiff complains that the interview panel included the selectee's former supervisor, but any theoretical "unfairness" from this possible conflict does not amount to unlawful discrimination or pretext. See Housley, 177 F. Supp. 2d at 1217.  Plaintiff repeats her stock assertion that she was more qualified than the selectee.  Pl. Opp'n at 30-32.  But again, plaintiff's assertions as to her superior qualifications are belied by the selectee's superior experience, including the selectee's occasional service in the position on a temporary basis.  See Def. Mem. at 21.  Certainly, she has not shown that shw was "significantly better qualified" than the selectee.  See Carter, 387 F.3d at 881. Finally, the fact that the selectee was a African-American female, while not dispositive, cuts against plaintiff's claims of discrimination based on sex and race.  See Murray v. Gilmore, 406 F.3d 708, 715 (D.C. Cir. 2005) ("a replacement in the same protected class cuts strongly against any inference of discrimination") (citing Brody, 199 F.3d at 451).

Ultimately, plaintiff's claims of discriminatory non-selection rely significantly on the sheer number of positions for which she applied but was rejected.  Beyond the five non-selections in this action, plaintiff cites several other positions within VA for which she was not

selected as evidence of discrimination.  Although several non-selections may be disheartening for plaintiff, the sheer number of non-selections alone is not sufficient to establish that defendant's proffered justifications were a pretext for discrimination.  Plaintiff must offer some evidence that tends to show defendant's justification is pretextual, or at least that there is a genuine dispute of material fact.  That she has not done.

## II.    Retaliation Claims

Plaintiff's surviving retaliation claims shadow her discrimination claims examined above. They are based on the same five discrete instances of non-selection, but they allege that defendant's action was motivated not by discriminatory intent, but by retaliation for plaintiff undertaking activities protected by Title VII.  To establish a prima face case for retaliation, plaintiff must show that she engaged in protected activity and suffered an adverse employment action, and that there was a causal connection between the two.  See Brody, 199 F.3d at 452. Once a prima facie case is made, a claim of retaliation follows the McDonnell-Douglas burden shifting regime, but the focus for this type of claim is illegal retaliation, rather than discrimination.

Plaintiff has easily established the first two elements of a prima facie retaliation claim. She engaged in protected activity in 1995 and 1996 when she complained to her supervisors about the impact on African-American workers of the 1996 OHRM reorganization.  See also McGowan v. Billington, 281 F.Supp.2d 238, 245 (D.D.C. 2003) (scope of statutorily protected activity is broad, and includes opposition to allegedly discriminatory practices outside the EEOC process).  Her most recent meeting with supervisors about this issue occurred on September 11, 1996 with Mr. Brickhouse.  See Oliver-Simon Decl. ¶ 23.  Plaintiff

also made several complaints to the EEOC including: an initial meeting with an EEO counselor on April 29, 1999; a formal EEO complaint on June 17, 1999; and an amended complaint on January 12, 2001.  See Oct. 31, 2002 Mem. Op. at 2; Pl. Mot. to Alter or Am. J., Ex. 2.  It is also undisputed that, for four of her five non-selection claims, plaintiff was subjected to an adverse employment action.

The final element of a prima facie retaliation case is a causal connection between the protected activity and the adverse personnel action.  See Brody, 199 F.3d at 452.  Plaintiff has not offered any direct evidence of a connection between her protected activity and the alleged adverse employment actions, and therefore she must rely on circumstantial evidence of the close temporal proximity between the complaint of discrimination and her non-promotions. See Clark Cty. School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'").  The Supreme Court has cited with approval cases holding that three and four month delays between the protected activity and the adverse action means they were not causally connected.  Id.; see also Baker v. Potter, 294 F. Supp. 2d 33, 41 (D.D.C. 2003) (two-month gap is insufficient to establish temporal proximity); Brodetski v. Duffey, 199 F.R.D. 14, 20 (D.D.C. 2001) ("courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside a year in length").

For each of plaintiff's non-selection claims, the decision not to select her occurred many months after plaintiff's protected activity.  For position HRM-98-74, plaintiff's non-selection

occurred over two and half years after plaintiff's last meeting with a supervisor regarding her

complaints about discrimination in the VA reorganization.  This gap, without additional

evidence, is far too long to establish the necessary causal link for a prima facie retaliation case.

For positions HRM-00-24 and HRM-00-50, plaintiff did engage in additional protected activity

by filing an EEOC complaint in June of 1999 prior to her non-selection for these positions.

However, again, the temporal proximity between the administrative complaint and her non-

selections (approximately nine and seventeen months), without more, is insufficient to establish

causation.  See Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C. 1992) (holding that nearly a year

"between plaintiff's EEO activity and the adverse employment decision is too great to support an

inference of reprisal").  For plaintiff's final non-selection claim, HRM-01-01, plaintiff once again

contacted the EEOC, this time on November 30, 2001, complaining of discrimination.  This

contact occurred only a couple of months before plaintiff was rejected for position HRM-01-01,

but there is not evidence in the record that the interview panel was aware of plaintiff's November

contact with the EEOC.  See Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985) (to establish

causation plaintiff must show that decision makers were aware of protected activity).  Without

that evidence, plaintiff cannot meet the prima facie case requirement of a causal link between the

protected activity and her non-selection.

    In response, plaintiff argues that officials involved in her non-selection, Mr. Cowles, Mr.

Brickhouse, Ms. Felder, and Ms. Gibson, were well aware of her complaints about discrimination

in the VA reorganization.  See Pl. Opp'n at 42.  However, plaintiff's non-selection for each

position was a function of the scores she received from the different rating panels, and only Ms.

Felder was involved in any of the rating panels that reviewed plaintiff's application.  Plaintiff

tries to impute knowledge of her activity to the rating panel members through a "cat's paw"
theory, but there is simply no evidence that rating panel members were trying to curry favor with
supervisors by retaliating against plaintiff.  Moreover, plaintiff's evidence addresses only the
requisite knowledge of the decision-makers in her non-selection -- to establish causation,
plaintiff must account for the significant time between her protected activities and non-selections
in three of the four remaining positions, which she has not done.  See Hazward v. Runyon, 14 F.
Supp. 2d 120, 124 n.8 (D.D.C. 1998) (knowledge alone not sufficient to establish causation).

Even had plaintiff established a prima facie case on her retaliation claims, moreover,
defendant has offered a legitimate non-retaliatory reason for not selecting her for the positions.
For each of the four positions, a rating panel ranked plaintiff below the top candidates and her
name was not forwarded to the selecting official for final consideration.  And just as with
plaintiff's discrimination claims, her evidence on pretext -- alleged procedural irregularities and
plaintiff's self-assessment -- is insufficient to defeat summary judgment in defendant's favor.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment on
plaintiff's discrimination and retaliation claims.  A separate order has been issued on this date.


_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge


Dated:     August 25, 2005_____


-27-

Copies to:

**Camilla C. McKinney**
Law Offices of Camilla C. McKinney, PLLC
1100 15th Street, NW
Suite 300
Washington, DC 20005-1720
(202) 861-2934
Fax (202) 517-9111
　　　　*Counsel for Plaintiff*

**Brian J. Sonfield**
U.S. Attorney's Office
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7143
Fax (202) 514-8780

**Carol Catherman**
U.S. Attorney's Office
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 307-0406
Fax (202) 514-8780
　　　　*Counsel for Defendant*